522 A.2d 579

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kevin QUARLES, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 19, 1986.

Filed March 3, 1987.

274

Peter J. Scuderi, Philadelphia, for appellant.

Marilyn F. Murray, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

Appellant, Kevin Quarles, was convicted of second degree murder, two counts of robbery, and possession of an instrument of crime after a jury trial in the Court of Common Pleas of Philadelphia County. On appeal, appellant raises the following issues: (1) whether the trial court erred in failing to give jury charges on the effect of both prior felony convictions and prior inconsistent statements on a witness's credibility; (2) whether the trial court erred in permitting the jury to be asked death qualification questions; (3) whether appellant's trial counsel rendered ineffective assistance of counsel; and (4) whether the evidence introduced at trial was sufficient to support the jury's verdict. For the reasons stated below, we affirm the judgment of sentence.

Appellant's arrest and subsequent conviction resulted from an incident occurring on September 21, 1984 in McMichael Park in Philadelphia. The incident is aptly described in appellee's brief as follows:

The trial evidence established that on September 21, 1984, at approximately 10:30 p.m., defendant, Markel Lewis, and the murder victim, William Sellers, were walking through McMichael Park in Philadelphia looking for a party, when they came upon Thomas Kelly and Michael Rapone, who were sitting on a park bench drinking beer (N.T. 5/16/85, 1.93; 5/17/85, 31–32; 5/20/85, 3.14). They asked Kelly and Rapone about the party, but they knew nothing about it, and the five men talked for

approximately one half hour (N.T. 5/16/85, 1.94–1.95; 5/17/85, 33–34; 5/20/85, 3.15). When Kelly said he would have to leave for work and Rapone stated he would go along with him, defendant pulled out a handgun and ordered all four men to raise their hands (N.T. 5/16/85, 1.97; 5/17/85, 37; 5/20/85, 3.16–3.17). Defendant then ordered the four men over to a clump of trees in the middle of the park, where he made then lie face down on the ground (N.T. 5/16/85, 1.97–1.99; 5/17/85, 37–39; 5/20/85, 3.17–3.18). After threatening to shoot Kelly, defendant took $3 from him, along with his keys, watch and wallet, shoved his face in the mud and kicked him in the head and ribs (N.T. 5/17/85, 40–43). Defendant then tied Rapone's hands behind his back with his belt and kicked Lewis and Sellers (N.T. 5/16/85, 1.102; 5/17/85, 44; 5/20/85, 3.21). During the course of the attacks, defendant fired two shots into the ground (N.T. 5/16/85, 1.101, 1.104; 5/17/85, 44–45). As Sellers pleaded with defendant to let him leave because he had two children and a wife, defendant pushed the gun to his head and shot him, killing him (N.T. 5/20/85, 3.23, 3.69).

Officer Stephanie Day, who was making a traffic stop near McMichael Park, heard the three shots at approximately 11:25 p.m. and proceeded to the park to investigate, where she found Kelly running towards her car for help and Rapone running around the park with his hands tied behind his back (N.T. 5/16/85, 1.29–1.39). Officer Robert Kerwin then arrived on the scene and with a spotlight, spotted the body of William Sellers lying face down on the ground in a pool of blood, with a bullet wound under the right eye (N.T. 5/16/85, 1.69–1.71).

Appellee's brief at pp. 1–3 (footnote omitted). After denial of his post-verdict motions, appellant filed the present appeal.

Appellant first contends that the trial court erred by not charging the jury about the effect of prior inconsistent statements and prior felony convictions on a prosecution witness's credibility. Specifically, appellant asserts that the

▮▮▮▮▮▮▮▮▮▮

trial court erred in failing to charge the jury that the testimony of Markel Lewis (a prosecution witness) should be received with caution since on a previous occasion he made statements inconsistent with his statements during his in-court testimony. Appellant further maintains that the trial court erred by failing to charge the jury on the effect of Mr. Lewis's felony convictions on his credibility.

▮ We, however, find that appellant's first contention is waived since appellant's counsel failed to make any objection on these points after the trial judge charged the jury.[1] "Pennsylvania Rule of Criminal Procedure 1119(b)[2] states that no charge nor omission can be ruled erroneous unless objections are made prior to jury deliberation." *Commonwealth v. Fisher*, 342 Pa.Super. 533, 541, 493 A.2d 719, 723 (1985) (footnote added). *See also Commonwealth v. Larkins*, 340 Pa.Super. 56, 67, 489 A.2d 837, 842 (1985) ("The reason (sic) for requiring specific objections after the charge, even where points for charge had previously been proposed, are apparent. Primarily, it ensures that the court is given opportunity to avoid error.").

Appellant next contends that the trial court erred in permitting the jury to be asked death qualification questions. Appellant argues the death qualification procedure resulted in a jury that was more conviction-prone. In addition, appellant also maintains the death qualification

---

**1.** After the trial judge delivered his jury charge, the following exchange occurred between the trial judge and appellant's trial counsel:

THE COURT: Gentlemen, are there any objections to the charge as delivered?

I will hear from the defense first.

MR. GREENE: In my judgment, it's my considered opinion that you, Judge Malmed, gave an extremely fair charge.

This is what you have done in other cases which I have tried in your courtroom, and in my judgment you performed admirably in your charge. My compliments to you.

N.T. 5/23/85, 5.31.

**2.** Pa.R.Crim.P. 1119(b) states:

No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury.

procedure produced a jury that did not contain a representative cross-section of the community. We, however, find appellant's contention to be meritless. The Pennsylvania Supreme Court has "held that death qualification does not deprive the defendant of a fair determination of guilt or innocence." *Commonwealth v. Colson*, 507 Pa. 440, 453, 490 A.2d 811, 817–818 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). *See also Commonwealth v. Maxwell*, 505 Pa. 152, 165, 477 A.2d 1309, 1316 (1984) ("Simply questioning potential veniremen on their position regarding the death penalty, or excluding those who are strongly opposed to it and cannot impose it under any conditions, does not necessarily produce a prosecution oriented jury.").

In addition, the United States Supreme Court, in a recent decision, *Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), held that the Constitution does not prohibit the removal for cause, prior to the guilt phase of a bifurcated capital trial, of prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors at the sentencing phase of the trtial. *Id.* at 1760. The Supreme Court also held that, even assuming "death qualification produces juries somewhat more conviction-prone than non-death qualified juries, ... the Constitution does not prohibit the States from 'death qualifying' juries in capital cases." *Id.* at 1764. Two reasons support the Court's latter holding permitting states to death-qualify juries in capital cases. First, the Court stated "groups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors ... are not 'distinctive groups' for fair cross-section purposes." *Id.* at 1765. Second, the Court also noted that an "impartial jury consists of nothing more than jurors who will conscientiously apply the law and find the facts." *Id.*

Appellant also contends that he received ineffective assistance of counsel at trial. Appellant argues that his trial

counsel rendered ineffective assistance by failing to request an accomplice charge for Markel Lewis, by failing to object to the trial court's jury instructions on identification, and by failing to object to the trial court's charge on alibi.

The appellate standard of review to be applied to claims of ineffective assistance of counsel was recently enunciated by the Pennsylvania Supreme Court in *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985). The Court noted:

> This Court recently reiterated the appellate standards for reviewing claims of ineffective assisstance of counsel; in *Commonwealth v. Anderson*, 501 Pa. 275, 286, 461 A.2d 208, 213 (1983), we stated: We remain guided by the standards first articulated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 609–606, 235 A.2d 349, 352–353 (1967):
>
>> (C)ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel decisions had any reasonable basis. Moreover, counsel will not be deemed ineffective for failing to raise baseless or frivolous issues. *Commonwealth v. Arthur*, 488 Pa. 262, 265, 412 A.2d 498 (1980). It is only when the claim which has been forgone is of arguable merit that further inquiry must be made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Hubbard*, 472 Pa. 259, 278, 372 A.2d 687, 696 (1977).
>
> Additionally, because counsel's stewardship of the trial is presumptively effective, the burden of establishing counsel's ineffectiveness rests upon the defendant.

*Id.*, 506 Pa. at 614–615, 487 A.2d at 805–806. Furthermore, in *Commonwealth v. Griffin*, 511 Pa. 553, 515 A.2d 865 (1986), the Pennsylvania Supreme Cout, in discussing the

above standards, stated, "(I)mplicit in these standards is the requirement that the defendant must demonstrate that he was harmed by his attorney's alleged ineffective assistance." *Id.* 511 Pa. at 566, 515 A.2d at 871.

In the instant case, appellant's contention of his trial counsel's ineffectiveness by failing to object to the judge's *Kloiber* charge [3] on identification is waived. In his post-verdict motions, appellant asserts only his trial counsel's ineffectiveness for failure to give the trial judge a *Kloiber* identification charge for presentation to the jury, not trial counsel's failure to object to the trial judge's identification charge to the jury. When a defendant's post-verdict motions do not contain an objection included in defendant's appeal claim, the claim is waived and will not be considered on appeal. *See Commonwealth v. Gravely*, 486 Pa. 194, 198–199, 404 A.2d 1296, 1298 (1979). *See also Commonwealth v. Beckham*, 349 Pa.Super. 430, 433, 503 A.2d 443, 444 (1986) (only issues specifically raised in post-verdict motions are preserved for appellate review).

We also find that appellant's other two ineffectiveness contentions are meritless. Appellant contends that his trial counsel rendered ineffective assistance by failing to request an accomplice charge from the Commonwealth's witness, Markel Lewis. Trial counsel's strategy of not requesting an accomplice charge, however, was a reasonable defense strategy. Requesting an accomplice charge for Markel Lewis would have conflicted with appellant's alibi defense that ten minutes after the incident in the park he met his girlfriend at a bar some distance from the scene of the crime and that he could not have traveled the distance between the park and the bar in only ten minutes. Appellant's trial counsel could not logically argue that appellant had an accomplice to a crime appellant maintains he did not commit because he has an alibi. Appellant's trial counsel, consequently, reasonably chose to forego request-

---

**3.** *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954). This case enunciated the standards to be followed by trial judges in giving jury charges regarding witness identification of suspects.

ing an accomplice charge for Mr. Lewis, proffering only the potentially stronger alibi defense. *See McNeil*, 506 Pa. at 614–615, 487 A.2d at 805 ("Counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests.").

Appellant further contends that his trial counsel was ineffective because he did not object to the trial judge's alibi charge to the jury. Appellant maintains that the alibi charge was defective since it did not specifically tell the jury that the alibi testimony offered by appellant's witness did not have to be totally accepted to acquit appellant. We, however, find appellant's contention to be meritless. The trial judge in his charge to the jury regarding appellant's alibi stated: "The defense evidence to the effect that he was not present either *by itself* or together with other evidence *may be sufficient to raise a reasonable doubt of his guilt in your minds.*" N.T. 5/23/85, 5.20 (emphasis added). In addition, our review of the trial judge's charge on alibi and the alibi charge in *Pennsylvania Suggested Standard Jury Instruction,* Section 3.11 (1985) reveals that the two are very similar. Appellant's trial counsel, consequently, did not render ineffective assistance of counsel by failing to object to the trial judge's alibi charge since the judge's alibi charge informed the jury that the alibi, by itself or with other evidence, may be sufficient to raise reasonable doubts in the jurors' minds about appellant's guilt. Objecting to an alibi charge informing the jury that the alibi alone could be enough to raise reasonable doubts about appellant's guilt would have been frivolous.

Appellant's last contention is that the evidence adduced at his trial was insufficient to prove him guilty beyond a reasonable doubt. In *Commonwealth v. Jackson*, 506 Pa. 469, 485 A.2d 1102 (1985), the Pennsylvania Supreme Court enunciated the following appellate standard of review for insufficiency of the evidence claims: "Where a defendant challenges his conviction on appeal the test of sufficiency of evidence is whether, viewing all the evidence admitted at

trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charges was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Id.*, 506 Pa. at 472–473, 485 A.2d at 1103.

■ In the instant case, our review of the record reveals that the jury had more than sufficient evidence to prove appellant guilty beyond a reasonable doubt. Testimony adduced at trial establishes that appellant, Lewis, and Sellers (the murder victim) were walking through McMichael Park when they came across Kelly and Rapone. After the five men conversed briefly, appellant withdrew a concealed handgun and ordered the other four men to lie face down on the ground. Appellant kicked and assaulted the men while searching their clothing for money and other valuables. Appellant also fired several shots into the ground, and the murder victim pleaded for his life, saying he had a wife and two children. Ignoring the victim's pleas, appellant killed him by placing the gun against the victim's head and firing. In the present case, the jury could have found beyond a reasonable doubt that appellant's actions encompassed the elements of murder, robbery, and possession of an instrument of crime.

In reviewing the record, it is also clear that the jury believed the testimony of the Commonwealth's witnesses and rejected as unbelievable the testimony of appellant's witnesses, including the alibi offered by his girlfriend. "Such a determination is within the sole province of the trier of fact who is free to believe all, part, or none of the evidence." *Jackson*, 506 Pa. at 475, 485 A.2d at 1105. *See also Commonwealth v. Guest*, 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983) ("The fact finder is free is believe all, part, or none of the evidence.").

Accordingly, we affirm the judgment of sentence.

CAVANAUGH, J., concurs in the result.