644 A.2d 177

COMMONWEALTH of Pennsylvania

v.

Germaine B. JONES, Appellant.

Superior Court of Pennsylvania.

Argued March 29, 1994.

Filed June 14, 1994.

470

Ronald J. Sharper, Philadelphia, for appellant.

Sheilann P. Hewitt, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before CAVANAUGH, WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge:

Germaine Jones was tried non-jury and was found guilty of first degree murder, possession of an instrument of crime and recklessly endangering another person. Post-trial motions were denied, and Jones was sentenced to imprisonment for life on his conviction for first degree murder and to concurrent terms of imprisonment for not less than one (1) year nor more than two (2) years on his convictions for possessing an instrument of crime and recklessly endangering another person. On direct appeal from the judgment of sentence, Jones's principal argument is that the trial court erred by allowing the Commonwealth to introduce as substantive evidence the prior inconsistent statement of one of its witnesses, Jamal Williams. Jones also contends that the Commonwealth's evidence was so unreliable and contradictory that his convictions should not be

allowed to stand. After careful review, we affirm the judgment of sentence.

The evidence presented by the Commonwealth established that, on the evening of October 15, 1992, appellant and the victim, Lorenzo Brison, had an argument over a girl. The argument culminated when appellant "sucker punched" Brison and then ran away. On the following day, at or about 6:00 p.m., Brison was driving in a southerly direction on 15th Street in Philadelphia in his blue Chevy Blazer jeep, with his seven year old nephew riding as a passenger. When Brison passed the intersection of 15th and Dickinson Streets, appellant approached the jeep, pulled out a gun and fired several shots at Brison. One of the bullets fired by appellant struck Brison in the head, fatally wounding him. Brison's young nephew escaped without injury.

At trial, the Commonwealth called Jamal Williams, who testified that he had been present on the corner of 15th and Dickinson Streets at the time of the shooting and had heard the gunshots. Williams, however, denied that he had observed the person who had fired the shots. This was inconsistent with a prior statement which Williams had given to police on October 28, 1992, twelve days after the shooting, in which he had told police that he had observed appellant firing the shots at Brison. This statement had been reduced to writing and had been signed by Williams, using the name Jamal Cannon. When confronted with his prior statement, Williams said that he had given police a false name and address because he did not want to get involved. He also testified that his prior statement to police was false and that he had implicated appellant because he was angry with appellant and did not like him. Williams conceded, however, that the prior statement with which he was confronted at trial accurately reflected what he had told police on October 28, 1992. Williams also admitted that, after he had made the statement to police, he had read it and made corrections before signing the same.

Appellant objected to the admission of Williams's prior statement on grounds that it had been made under unreliable circumstances, i.e., because Williams had given police a false

name and address. He also asserted that the statement was inadmissible because the witness did not adopt it as being the truth at the time of trial, but, in fact, said that the prior statement had been false. In response to these objections, the trial court ruled as follows:

THE COURT: Okay. I'm satisfied that the statement meets the test of Brady. It's a signed statement given to the police under circumstances in which he was not forced or pressured. He says that it indicates that which he told them at that time. The weight of it is a question that you may argue, but the use of it by the Commonwealth to question the witness is appropriate under the circumstances here. Your exception is noted.

In *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), the Pennsylvania Supreme Court rejected the longstanding rule that prior inconsistent statements of a non-party witness could only be used for purposes of impeaching the credibility of the witness. The Court held "that otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein." *Id.* at 131, 507 A.2d at 70. In adopting this new rule, the Supreme Court reasoned as follows:

The simple fact is that "the usual dangers of hearsay are largely nonexistent where the witness testifies at trial." *California v. Green, supra* at 399 U.S. [149 at 155, 90 S.Ct. [1930] at 1933 [26 L.Ed.2d 489 (1970)]]. By hypothesis in these situations, the out-of-court declarant is now a witness in-court where he or she is placed under oath, subject to cross-examination and under observation by the finder of fact. *See Commonwealth v. Thirkield, supra* at 502 Pa. 542, 467 A.2d 323 [ (1983) ] (McDermott, J. dissenting: "the fact that [the oath and cross-examination requirements] are supplied in the current trial defuses hearsay concerns and provides the fact-finder with ample opportunity to determine truth."). Indeed, the cross-examination to which a recanting witness is subjected will likely be meaningful and

vigorous since the witness is already "on the spot" in having to explain the discrepancies between earlier statements and direct testimony, or deny that the earlier statements were made at all.

. . . .

The availability of cross-examination at trial also assures a meaningful opportunity for the trier of fact to observe the declarant who has been called upon and sworn as a witness and questioned as to the discrepancy between the prior statement and the direct testimony. The trier of fact may bring to bear his or her sensory observations, experience, common sense and logic upon the witness to assess credibility and to determine the truth and accuracy of both the out-of-court declarations and the in-court testimony. In one of the earlier opinions rejecting the orthodox position, Judge Learned Hand made this classic statement: "If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court." *DiCarlo v. United States*, 6 F.2d 364, 368 (2d Cir.1925).

Moreover, the prior statement can be viewed as possessing superior indicia of reliability as it was rendered at a point in time closer to the event described—usually much closer—when memory will presumably be fresher and opportunity for fabrication lessened. *McCormick, supra* at § 251; *Graham, supra* at 1571. Indeed, this is the rationale behind the past recollection refreshed exception to the hearsay rule. *McCormick, supra* at § 301.

*Commonwealth v. Brady, supra* 510 Pa. at 128–130, 507 A.2d at 69.

Six years later the Supreme Court revisited its decision in *Brady,* and, in *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992), clarified the *Brady* holding as follows:

[T]he important components of the *Brady* rule are that otherwise admissible prior inconsistent statements be given under highly reliable circumstances and the non-party de-

clarant be subject to cross-examination in the proceeding where the prior statement is to be admitted.

. . . .

Although the statement of the holding in *Brady* was that "otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein," 510 Pa. at 131, 507 A.2d at 70, we noted that Ms. Traxler's tape recorded statement was rendered under highly reliable circumstances assuring that it was voluntary, knowing and understanding. Those highly reliable circumstances included Ms. Traxler's attorney and her mother being present when Ms. Traxler gave her statement to police. In addition, Ms. Traxler's attorney questioned both Ms. Traxler and her mother to assure that the statement was being given knowingly, voluntarily and with understanding of her rights and options. Furthermore, her statement was recorded verbatim contemporaneously with its making. *Commonwealth v. Brady*, 510 Pa. at 131–32, 507 A.2d at 70.

In an effort to ensure that only those hearsay declarations that are demonstrably reliable and trustworthy are considered as substantive evidence, we now hold that a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements. See Note, **Substantive Admissibility of a Non–Party Witness' Prior Inconsistent Statements: Pennsylvania Adopts the Modern View,** 32 Vill.L.Rev. 471 (1987).

*Commonwealth v. Lively, supra,* 530 Pa. at 469–471, 610 A.2d at 9–10. See also: *Commonwealth v. Burgos,* 530 Pa. 473, 478–479, 610 A.2d 11, 14–15 (1992).

■ After careful review, we hold that the prior inconsistent statement of Jamal Williams was properly allowed as

substantive evidence in the instant case. The statement had been given by Williams twelve days after the shooting of Brison, at a time when the events had been fresh in the witness's mind and when it had been less likely that the witness had any motive for falsification. The statement had also been given under highly reliable circumstances. Williams voluntarily had gone with police to police headquarters to make the statement at a time when he had not been a suspect, had not been restrained by police in any way, and, by his own account, had been treated well by police. After the interview, moreover, the police had dropped Williams off at a location of his request. The statement which had been made by Williams had also been reviewed by him, and changes had been made before the statement had been signed. Indeed, even at trial, Williams conceded that the statement was an accurate narrative of the events which he had recited for police on October 28, 1992.

Contrary to appellant's suggestion, there is no requirement that a witness, at the time of trial, adopt his or her prior statement as being truthful in order for the statement to be admissible under *Commonwealth v. Lively supra.* If this were so, the statement would not be inconsistent with the witness's trial testimony and there would be no need to introduce the prior statement. The requirement of *Lively* is that a prior inconsistent statement, which has been reduced to writing, will be admissible as substantive evidence if the statement, at the time when it was made, was signed and adopted by the witness. This requirement is to ensure that the witness's prior statement be accurately memorialized, as where prior testimony has been transcribed or where a prior statement has been recorded verbatim. In the instant case, the prior statement was signed and adopted by Williams at the time the statement was made. At trial, Williams also testified that the prior statement had been an accurate account of what he had earlier told to police. Under these circumstances, we hold that the requirements of *Lively* were met. Therefore, the prior inconsistent statement of Jamal Williams was properly received as substantive evidence.

■ We reject appellant's additional contention that the prior inconsistent statement of Jamal Williams was rendered unreliable because, at the time the statement had been made to police, the juvenile witness had not been accompanied by an interested adult. As we have already observed, Williams had not been a suspect in the shooting of Brison, and the circumstances surrounding his making of the statement indicate that it had been voluntarily given. Under these circumstances, the absence of an interested adult did not render Williams' prior statement unreliable. Cf. *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984) (absence of consultation with an interested adult will not render juvenile's waiver of his *Miranda* rights per se incompetent where totality of the circumstances indicate that a knowing, intelligent and voluntary waiver was made).

■ The change in the trial testimony of Jamal Williams did not render his identification of appellant as the killer so contradictory and unreliable as to prevent a conviction. In *Commonwealth v. Farquharson*, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976), the Supreme Court observed that a guilty verdict should be set aside when the evidence in support thereof is so unreliable and/or contradictory as to render speculative any verdict based thereon. Since that decision, however, the Supreme Court has made clear its reasoning in *Farquharson* "only applies in such cases where the patent unreliability of the testimony is such as to render a verdict of guilt based thereupon as no more than pure conjecture." *Commonwealth v. Whack*, 482 Pa. 137, 140, 393 A.2d 417, 419 (1978). See also: *Commonwealth v. Hudson*, 489 Pa. 620, 627, 414 A.2d 1381, 1385 (1980). The present case is not such a case.

■ At appellant's trial, James Wearen also testified that he had witnessed the shooting of Lorenzo Brison, and he identified appellant as the one who had shot Brison. Wearen's eyewitness testimony was corroborated by the prior statement which had been given to police by Jamal Williams. In that statement, Williams also had identified appellant as Brison's killer. This evidence was sufficient to sustain the trial court's

finding that appellant was the killer and that he was guilty of first degree murder, possession of an instrument of crime and recklessly endangering another person. Although both witnesses made statements prior to trial which were inconsistent with their in-court testimony,[1] they were questioned extensively regarding their prior statements, and the trier of fact could properly determine on which occasions the witnesses had been truthful. The existence of these prior inconsistent statements did not render the testimony of the Commonwealth's witnesses so unreliable as to make the trial court's verdicts mere conjecture.

Because the evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to prove appellant's guilt beyond a reasonable doubt, the finding of the trial court will not be disturbed.

The judgment of sentence is affirmed.

1. On cross-examination, Wearen was confronted with a prior inconsistent statement which he had made to appellant's prior counsel and a defense investigator, in which he had recanted his preliminary hearing testimony and had said that he did not see appellant at the time of the shooting, but that he had seen a gun in Brison's jeep and had believed that appellant had acted in self-defense.